## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STARBUCKS CORPORATION, | |
| Plaintiff, | CASE NO. |
| vs. | |
| BRANDPAT, LLC DBA STARBUDS FLOWERS, | |
| Defendant. | |

## COMPLAINT

Starbucks Corporation ("Starbucks"), by and through its undersigned attorneys, Santomassimo Davis, LLP and Honigman LLP (to be admitted pro hac vice), for its Complaint against Defendant Brandpat, LLC d/b/a Starbuds Flowers ("Starbuds"), allege as follows:

## NATURE OF THE CASE

1.      This is an action involving Plaintiff Starbucks, one of the most well-known and famous brands in the United States (and world), and Defendant Starbuds, a marijuana seller operating a mobile business out of a re-purposed food truck, deliberately copying the intellectual property Starbucks has developed.

2.      Starbucks has invested in a substantial intellectual property portfolio consisting of federally registered copyrights and federally registered and incontestable trademarks.  At the forefront of Starbucks widely recognized intellectual property, are its famous "Siren" design logos shown below.





(U.S. Copyright Reg. No. VA 875-932)
(U.S. Trademark Reg. Nos.: 1,815,937, 2,266,352, 3,298,945, and 3,259,865)

(U.S. Copyright Reg. No. VA 1-768-520)
(U.S. Trademark Reg. Nos.: 4,538,053 and 4,572,688)

3.    Starbuds, clearly intending to copy Starbucks and its intellectual property, reproduced the Starbucks intellectual property by designing its brand to closely mirror the Starbucks brand by choosing a confusingly similar logo and name (Starbuds). Infringement is clear from simply looking at Starbuds' infringing logo (as shown below) (herein-after referred to as the "Infringing STARBUDS Logo").



Infringing STARBUDS Logo



(U.S. Copyright Reg. No. VA 875-932)
(U.S. Trademark Reg. Nos.: 1,815,937, 2,266,352, 3,298,945, and 3,259,865)

2



4.    The similarities are striking between the Infringing STARBUDS Logo and the federally registered copyrighted works and federally registered and incontestable trademarks owned by Starbucks, as shown below:

a.    the double-ringed green circle;

b.    a siren (twin-tailed mermaid) in the center wearing a crown in white on a black background, the siren having similar facial and body features and the same waves of hair framing the entire body from the crown to the bottom of the image, and having marijuana leaves on each side of the body similar to the twin tails of the siren;

c.    the word STARBUDS in the upper green band of the circle (in place of STARBUCKS);

d.    the word FLOWERS in the lower green band of the circle (in place of COFFEE);

3

     e.      use of all capital letters in the same white color against a green background similar to the concentric circles logo;

     f.      marijuana leaves in place of the stars on both sides separating the wording; and

     g.      similar proportions and composition of the elements of the logo.



5.     These similarities are not coincidental – Starbuds intended to copy Starbucks and its intellectual property.

6.     Starbucks has repeatedly tried to stop Starbuds' infringing use. To date, Starbuds has not provided Starbucks with a response to its repeated requests.

7.     Accordingly, this is an action for copyright infringement arising under arising under 17 U.S.C. 501(a), *et seq*., trademark infringement under the Lanham Act, 15 U.S.C. §§

1051, 1125, *et seq.*, dilution by blurring, dilution by tarnishment, and related state law claims based on Starbuds' willful infringement of Starbucks copyrights and trademarks.

## PARTIES, JURISDICTION AND VENUE

8.      Plaintiff Starbucks Corporation is a corporation organized and existing under the laws of the State of Washington with a principal place of business at 2401 Utah Avenue South, Seattle, WA 98134.

9.      Upon information and belief, Defendant Brandpat, LLC is a limited liability company organized and existing under the laws of the State of New York operating a marijuana business from a re-purposed food truck under the name "Starbuds Flowers."  Upon further information and belief, Starbuds Flowers is a transient business but frequently parks its re-purposed food truck on the street in front of the business address 287 Park Ave South, New York, NY 10010.  Pursuant to Fed. R. Civ. P. 4(h)(1)(B), Starbuds may be served by delivering a copy of the summons and complaint to its registered agent, Terence Brandon, at 248-25 Northern Blvd, Ste 1J-464, Little Neck, NY 11362.

10.     There is personal jurisdiction over Starbuds because Starbuds has engaged in substantial and systematic commercial activities with individuals and entities located in this State, has offered and/or sold goods and services within this State in the ordinary course of trade, and otherwise has constitutionally sufficient contacts with this State so as to make personal jurisdiction proper in this Court.  Personal jurisdiction over Starbuds is also appropriate because Starbuds offers and provides the services that are the subject of this action within this State and this district.  Moreover, as described further below, Starbuds intentionally infringed on intellectual property rights that it knew were owned by Starbucks.  Starbuds' actions were expressly aimed at consumers in this State and this district, causing harm to Starbucks.

11.     The Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b) as this case arises under the Copyright Act (17 U.S.C. § 501(a), *et seq.*) and the Lanham Act (15 U.S.C. § 1051, *et seq.*), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution. Moreover, this Court has subject matter jurisdiction pursuant 28 U.S.C. § 1332 as there is diversity between the parties and the amount in controversy exceeds $75,000.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)–(c). Specifically, venue is proper pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2) because Starbuds operates its business in this district, committed acts of infringement in this district, and a substantial part of the events or omissions giving rise to this action occurred in this district.

## BACKGROUND

### *Starbucks And Its World Renowned Brand*

13.     Starbucks is a leading purveyor of fine *Arabica* coffee, maintaining the world's largest number of cafes featuring many types of beverages, including coffee, tea, cocoa, coffee and tea based beverages, along with a wide array of other food and confectionery items.

14.     Starbucks prominently displays its intellectual property depicted below throughout its retail store locations across the United States and in connection with its goods and services. Starbucks intellectual property includes:

- Its federally registered copyrighted works entitled the "Starbucks Coffee Siren Logo" (U.S. Copyright Reg. No. VA 875-932) and the "40th Anniversary Siren Design" (U.S. Copyright Reg. No. VA 1-768-520) (collectively referred to as the "Starbucks Copyrights"), as shown below.

6

 

U.S. Copyright Reg. No. VA 875-932        U.S. Copyright Reg. No. VA 1-768-520

- Its famous and highly distinctive trademarks that Starbucks has used in conjunction with its goods and services since the 1970s, including "STARBUCKS" (U.S. Trademark Reg. Nos. 1,452,359, 2,086,615, 3,298,944) and "STARBUCKS COFFEE" (U.S. Trademark Reg. No. 2,035,005) (both marks collectively referred to as "STARBUCKS Marks"); and

- Iterations of the famous siren design marks (the STARBUCKS Marks and the Starbucks Siren Logos are collectively referred to as the "STARBUCKS Trademarks") (collectively referred to as the "Starbucks Siren Logos"), to identify its goods and services to promote its STARBUCKS Trademarks. Examples of the historic Starbucks Siren Logos are below.

 

U.S. Trademark Reg. Nos.: 1,815,937,        U.S. Trademark Reg. Nos.: 4,538,053 and
2,266,352, 3,298,945, and 3,259,865                          4,572,688

15.    Starbucks has been in operation for more than fifty (50) years and has grown to nearly 17,000 licensed and company-owned store locations across all 50 states, Washington

7

D.C., and Puerto Rico. Specifically, Starbucks operates nearly 10,000 company-owned cafes across the United States, including in various high-profile locations in New York, such as its store at the rink level of Rockefeller Plaza and its location inside Macy's iconic Herald Square store.  Additionally, Starbucks beverages are sold in nearly 7,000 Starbucks stores operated by over 500 licensees in locations like grocery stores, retail stores, hotels, airports, hospitals, and various other locations.  Each of these stores prominently displays one or more of the Starbucks Copyrights and STARBUCKS Trademarks.

16.    Simply put, as a result of the extensive reach of Starbucks and its related companies, licensees, and distributors, Starbucks products are available in tens of thousands of locations resulting in tens of millions of customers encountering the Starbucks Copyrights and STARBUCKS Trademarks, *every day*.

17.    The pictures below are representative of the current use of the Starbucks Copyrights and STARBUCKS Trademarks and how they appear on signage, menu boards, cups, and/or product packaging.

4871-6047-8668, v. 2









 

 

11





18.     Starbucks also operates one of the most popular apps on the AppStore.  Millions of users use the Starbucks App to purchase Starbucks products, ***every day***.  The Starbucks App prominently features the Starbucks Copyrights and STARBUCKS Trademarks, as depicted below.

12



19.     Starbucks and its Starbucks Copyrights and STARBUCKS Trademarks have received significant media attention, including via news articles, television, and movies. Some of these examples include:

    a.      At least 106 news outlets published stories about Starbucks and its products and services (as shown in **Exhibit A**) for example:

        (1)     HuffPost (formerly Huffington Post);

        (2)     Forbes;

        (3)     Reuters;

        (4)     Fortune;

        (5)     The Associated Press;

        (6)     The Guardian;

        (7)     USA Today;

        (8)     Vogue;

        (9)     Washington Post; and

13

(10)    The Independent.

b.      At least 81 widely circulated television programs (as shown in **Exhibit B**),

for example:

(1)    Saturday Night Live;

(2)    The Office;

(3)    Orange is the New Black;

(4)    The Simpsons;

(5)    Black-ish;

(6)    Emily in Paris;

(7)    Big Little Lies;

(8)    Dead to Me

(9)    The Upshaws; and

(10)    Law & Order.

c.      At least 149 widely circulated motion pictures (as shown in **Exhibit C**),

for example:

(1)    The Devil Wears Prada;

(2)    Zoolander;

(3)    License to Wed;

(4)    The Proposal;

(5)    Clueless;

(6)    127 Hours;

(7)    Jurassic World;

(8)    You've Got Mail;

14

(9)     Fight Club; and

(10)    I Am Sam.

20.     This widespread attention to and distribution of the Starbucks Copyrights and STARBUCKS Trademarks and has resulted in significant fame. The fame of the Starbucks intellectual property is consistently recognized in by brand studies, including, but not limited to, the following references:

    a.    Starbucks has been consistently named among the World's Most Admired Companies in *Fortune Magazine* for the last decade;

    b.    *Fortune Magazine's* annual Fortune 500 list also ranks Starbucks highly in terms of total revenue every year for the past twenty (20) years;

    c.    Starbucks has regularly received top-level brand rankings from various brand-evaluation agencies over the past 22 years, including from *Interbrand* and *Forbes* brand rankings of the World's Most Valuable Brands;

    d.    Starbucks is also ranked as a top 30 most valuable brand by the BrandZ study, which *Kantar* represents is the largest global brand equity study; and

    e.    BrandFinance Global 500, a leading brand valuation consultancy, annually ranks the world's most valuable brands and how their brands contribute to the overall value of the company and has consistently ranked Starbucks in the top 100 brands (2015–23) and previously in the top 200 (2007–14).

21.     Federal district courts agree that Starbucks (and its robust intellectual property portfolio) has achieved legally significant recognition. *See, e.g., Starbucks Corp. v. Blood,* Civil

4871-6047-8668, v. 2

No. 7:15-cv-00206-WLS, Dkt. No. 14 (M.D. Ga. Mar. 28, 2017) (finding that the Starbucks marks are famous and distinctive and thus entitled to protection from blurring); *Starbucks Corp. v. Lundberg,* No. CV 02–948–HA, 2005 WL 3183858, *3 (D. Or. Nov.29, 2005) (finding the STARBUCKS Mark is famous and distinctive); *Starbucks Corp. v. Heller*, No. CV 14-01383 MMM MRWX, 2014 WL 6685662, at *6 (C.D. Cal. Nov. 26, 2014) (finding the "STARBUCKS" and "STARBUCKS COFFEE" names and the Starbucks Siren Logo as famous and highly distinctive).

22.     As a result of the foregoing sales and marketing activities, and the significant third-party recognition, Starbucks has become a well-known, widely recognized, and highly distinctive brand which customers associate with Starbucks and its products and services.

### *The Starbucks Intellectual Property*

23.     To ensure that consumers associate its products and services with its brand, Starbucks has continuously used its intellectual property on its products and in connection with its services, and has done so for decades.

24.     Starbucks has federally registered the original artistic work in the Starbucks Copyrights with the U.S. Copyright Office and is the owner, *inter alia*, of U.S. Copyright Reg. No. VA 875-932 (the "Starbucks Coffee Siren Copyright") and U.S. Copyright Reg. No. VA 1-768-520 (the "40th Anniversary Siren Copyright), as depicted below:

| Work | Title | Reg. No |
|---|---|---|
|  | Starbucks Coffee Siren Logo | Reg. No. VA 875-932 |

| Work | Title | Reg. No |
|------|-------|---------|
|  | 40th Anniversary Siren Design | Reg. No. VA 1-768-520 |

Copies of the foregoing United States Copyright Registration Certificates are attached hereto as **Exhibit D** and incorporated herein by reference.

25.     Starbucks is also the owner, *inter alia*, of the following representative incontestable United States trademark registrations for marks featuring the Starbucks Siren Logos (collectively referred to as the "Siren Logo Registrations"):

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use |
|------|-----------------------|------------------------------|
|  | 1,417,602<br>11-18-1986 | Class 30: Coffee, tea, spices, herb tea, chocolate, and coca<br>First Use in Commerce: 3-29-1971<br><br>Class 35:  Coffee distribution services and retail store services<br>First Use in Commerce:  3-29-1971<br><br>Class 43: Coffee bar services<br>First Use in Commerce: 3-29-1971 |
|  | 1,098,925<br>08-08-1978 | Class 30: Coffee, tea and cocoa<br>First Use in Commerce: 3-29-1971 |

17

| Mark | Reg. No. Reg. Date | Goods/Services First Use |
|---|---|---|
|  | 1,542,775 06-06-1989 | Class 43: Restaurant services featuring coffee and espresso beverages and also serving sandwiches and breakfasts First Use in Commerce: 10-23-1987 |
|  | 1,815,937 01-11-1994 | Class 21: housewares; namely, coffee cups First Use in Commerce: 10-20-1992<br><br>Class 30: ground and whole bean coffee, First Use in Commerce: 09-01-1992<br><br>Class 35: retail store services featuring of all of the above goods First Use in Commerce: 08-30-1992<br><br>Class 43: Restaurant and cafe services. First Use in Commerce: 08-30-1992 |
|  | 1,815,938 01-11-1994 | Class 21: housewares; namely, coffee cups, cups First Use in Commerce: 10-20-1992<br><br>Class 30: ground and whole bean coffee First Use in Commerce: 09-01-1992<br><br>Class 35: retail store services featuring the above goods First Use in Commerce: 08-30-1992<br><br>Class 43: Restaurant and cafe services. First Use in Commerce: 08-30-1992 |
|  | 1,943,361 12-26-1995 | Class 30: flavoring syrups for beverages First Use in Commerce: 04-30-1993 |
|  | 2,266,352 8-3-1999 | Class 43: restaurant, cafe and coffee house services First Use in Commerce: 10-20-1992 |

18

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use |
|---|---|---|
|  | 2,696,192<br>3-11-2003 | Class 29:  Flavoring syrups used to make milk-based food beverages<br>First Use in Commerce: 10-23-1987 |
|  | 3,298,945<br>09-25-2007 | Class 30: Coffee<br>First Use in Commerce: 03-21-2004 |
|  | 3,259,865<br>7-10-2007 | Class 40: coffee roasting and processing<br>First Use in Commerce: 09-1-1992 |
|  | 3,931,909<br>03-15-2011 | Class 30: Ground and whole bean coffee; coffee and espresso beverages; beverages made with a base of coffee and/or espresso; ready-to-drink coffee<br>First Use in Commerce: 06-03-1985<br><br>Class 43: Restaurant, cafe, cafeteria, coffee bar and coffee house, carry out restaurant, and take out restaurant services; preparation of carry out beverages<br>First Use in Commerce: 06-03-1985 |
|  | 4,538,053<br>3-27-2014 | Class 9: vending machines<br>First Use in Commerce: 3-31-2011<br><br>Class 11: Electrical appliances, namely, espresso makers and coffee makers for commercial use<br>First Use in Commerce: 10-31-2011<br><br>Class 16: paper napkins, paper bags<br>First Use in Commerce: 3-31-2011 |

19

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use |
|---|---|---|
| | | Class 21:  Insulated coffee and beverage cups, insulated vacuum bottles, coffee cups and mugs, glassware, paper cups and insulated sleeves for beverage cups<br>First Use in Commerce: 3-8-2011<br><br>Class 25: T-shirts, polo shirts, sweatshirts, caps, hats, jackets, and aprons<br>First Use in Commerce: 3-31-2011<br><br>Class 29: Flavored milk, milkshakes and milk based beverages<br>First Use in Commerce: 3-8-2011<br><br>Class 30: Ground and whole bean coffee, cocoa, herbal and non-herbal tea, coffee, tea, cocoa and espresso beverages, and beverages made with a base of coffee and/or espresso, beverages made with a base of tea, powdered chocolate; sauces to add to beverages; chocolate syrup, flavoring syrups to add to beverages, baked goods, namely, muffins, scones, biscuits, cookies, pastries and breads, sandwiches, granola, ready-to-drink coffee; chocolate, candy and chocolate confections; and sauces<br>First Use in Commerce: 3-8-2011<br><br>Class 32: Water, and other non-alcoholic drinks, namely, fruit drinks and fruit juices, fruit drinks containing fruit juices, powdered beverage mixes; flavoring syrups for making beverages; fruit juices, juice based beverages; frozen fruit beverages and frozen fruit-based beverages<br>First Use in Commerce: 3-8-2011<br><br>Class 35: Franchising, namely, providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars; retail store services in the field of coffee, tea, cocoa, packaged and prepared foods, housewares, kitchenware, |

4871-6047-8668, v. 2

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use |
|---|---|---|
| | | computerized on-line ordering services all in the field of coffee, tea, cocoa, packaged foods, prepared foods, computerized on-line retail store services all in the field of coffee, tea, cocoa, packaged foods, prepared foods, on-line ordering services all in the field of coffee, tea, cocoa, packaged foods, prepared foods, on-line retail store services all in the field of coffee, computerized online ordering services<br>First Use in Commerce: 3-31-2011<br><br>Class 41: Entertainment services, namely, the provision, organization, and production of entertainment, educational, recreational and/or musical events, namely, music shows, live musical performances, concerts, and other live music events and activities; providing information in the fields of music, video, news, cultural events, entertainment, health and wellness, and arts and leisure via communications networks; providing audio in the fields of music, video, news, cultural events, entertainment, health and wellness, and arts and leisure via communications networks; providing video in the fields of music, video, cultural events, entertainment, health and wellness, and arts and leisure via communications networks; providing other multimedia content in the fields of music, video, news, cultural events, entertainment, health and wellness and arts via communications networks; publishing of text, graphic, audio and video works via communications networks; entertainment services, namely, providing commentary and articles about music<br>First Use in Commerce: 3-8-2011<br><br>Class 43: Restaurant, cafe, cafeteria, snack bar, coffee bar and coffee house, carry out restaurant, and take out restaurant services; coffee supply services for offices; contract food services; food preparation; preparation of |

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use |
|---|---|---|
| | | carry out foods and beverages<br>First Use in Commerce: 3-8-2011 |
|  | 4,572,688<br>7-22-2014 | Class 9: vending machines<br>First Use in Commerce: 3-31-2011<br><br>Class 16: paper napkins, paper bags<br>First Use in Commerce: 3-31-2011<br><br>Class 21:  Insulated coffee and beverage cups, insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, non-electric drip coffee makers, paper cups and insulated sleeves for beverage cups<br>First Use in Commerce: 3-8-2011<br><br>Class 25: T-shirts, polo shirts, sweatshirts, caps, hats, jackets, and aprons<br>First Use in Commerce: 3-31-2011<br><br>Class 29: Milk, flavored milk, milkshakes and milk based beverages<br>First Use in Commerce: 3-8-2011<br><br>Class 30: Ground and whole bean coffee, cocoa, herbal and non-herbal tea, coffee, tea, cocoa and espresso beverages, and beverages made with a base of coffee and/or espresso, beverages made with a base of tea, powdered chocolate; sauces to add to beverages; chocolate syrup, flavoring syrups to add to beverages, baked goods, namely, muffins, scones, biscuits, cookies, pastries and breads, sandwiches, granola, ready-to-drink coffee, and frozen confections; chocolate, candy and chocolate confections; and sauces<br>First Use in Commerce: 3-8-2011<br><br>Class 32: Water, and other non-alcoholic drinks, namely, fruit drinks and fruit juices, fruit drinks containing fruit juices, powdered beverage mixes; flavoring syrups for making beverages; fruit juices and juice based beverages; frozen fruit beverages and frozen fruit-based beverages |

22

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use |
|---|---|---|
| | | First Use in Commerce: 3-8-2011<br><br>Class 35: Business administration; business management; franchising, namely, providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars; retail store services in the field of coffee, tea, cocoa, packaged and prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, jewelry, books, musical recordings, mouse pads, tote bags made of cloth, plastic, or leather, toys, including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, Christmas ornaments;  wholesale distributorships in the field of coffee, tea, cocoa, packaged and prepared foods; wholesale stores in the field of coffee, tea, cocoa, packaged foods, prepared foods; wholesale ordering services in the field of coffee, tea, cocoa, packaged foods, prepared foods; computerized on-line ordering services all in the field of coffee, tea, cocoa, packaged foods, prepared foods, computerized on-line retail store services in the field of coffee, tea, cocoa, packaged foods, prepared foods, on-line ordering services  in the field of coffee, tea, cocoa, packaged foods, prepared foods, on-line retail store services in the field of coffee, computerized on-line computerized online ordering services<br>First Use in Commerce: 3-8-2011<br><br>Class 36: Financial services, namely, credit, and stored-value card services; charitable fund raising services<br>First Use in Commerce: 3-31-2011<br><br>Class 41: Entertainment services, namely, the provision, organization and production of entertainment, educational, recreational and/or musical events, namely, music shows, live musical performances, concerts, and other live music events and activities; arranging and |

| Mark | Reg. No. Reg. Date | Goods/Services First Use |
|---|---|---|
|  |  | conducting of personal appearances for entertainment purposes; providing information, audio, video, graphics, and other multimedia content in the field of music via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of video via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of television via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of news via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of sports via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of games via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of cultural events via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of entertainment via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of health and wellness via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of arts and leisure via communication networks; publishing of text, graphic, audio and video works via communications networks; entertainment services, namely, providing commentary and articles about music<br>First Use in Commerce: 3-8-2011<br><br>Class 43: Restaurant, cafe, cafeteria, snack bar, coffee bar and coffee house, carry out restaurant, and take out restaurant services; catering services; coffee supply services for |

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use |
|------|----------------------|------------------------------|
| | | offices; contract food services; food preparation; preparation and sale of carry out foods and beverages<br>First Use in Commerce: 3-8-2011 |

Copies of the foregoing United States Trademark Registrations and accompanying Trademark Status and Document Retrieval (TSDR) records reflecting their current status are attached hereto as **Exhibit E** and incorporated herein by reference.

26.     Starbucks also owns, *inter alia*, the following United States trademark registrations for the following marks featuring the term "Starbucks" (collectively referred to as the "STARBUCKS Registrations"):

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use in Commerce/Filing Basis |
|------|----------------------|------------------------------------------------------|
| STARBUCKS | 1,444,549<br>06-23-1987 | Class 35: RETAIL STORE SERVICES AND DISTRIBUTORSHIP SERVICES FOR COFFEE, TEA.<br>First Use in Commerce: 03-29-1971<br><br>Class 43:  COFFEE CAFE SERVICES<br>First Use in Commerce: 03-29-1971 |
| STARBUCKS | 1,452,359<br>08-11-1987 | Class 30: Coffee, tea, herb tea, chocolate and cocoa<br>First Use in Commerce: 03-29-1971 |
| STARBUCKS COFFEE | 2,035,005<br>02-04-1997 | Class 35: Wholesale supply services featuring ground and whole bean coffee, tea, cocoa, coffee and espresso beverages and beverages made with a base of coffee, espresso, and/or milk; powdered flavorings; flavoring syrups; baked goods, including muffins, scones, biscuits, cookies, pastries, cakes and breads, and packaged foods; sandwiches and prepared foods; chocolate and confectionery items; granola; dried fruits; juices; soft drinks; electric appliances, namely, kettles, |

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use in Commerce/Filing Basis |
|---|---|---|
|  |  | coffee makers, espresso makers and coffee grinders; housewares; non-electric appliances and related items, namely, insulated coffee and beverage cups (made of plastics and/or ceramics), insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers and non-electric plunger-style coffee makers; paper coffee filters; furniture; toys; books; and Retail outlet services featuring ground and whole bean coffee; tea; cocoa; coffee and espresso beverages and beverages made with a base of coffee, espresso, and/or milk; powdered flavorings; flavoring syrups; baked goods, including muffins, scones, biscuits, cookies, pastries, cakes and breads, and packaged foods; sandwiches and prepared foods; chocolate and confectionery items; granola; dried fruits; juices; soft drinks; electric appliances, namely, kettles, coffee makers, espresso makers and coffee grinders; housewares; non-electric appliances and related items, namely, insulated coffee and beverage cups (made of plastics and/or ceramics), non-paper coasters, insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers and non-electric plunger-style coffee makers; toys; books; musical recordings<br>First Use in Commerce: 08-31-1991<br><br>Class 43:  Restaurant, cafe and coffee house services<br>First Use in Commerce: 08-31-1991 |
| STARBUCKS COFFEE | 2,039,849 | Class 35:  wholesale supply services |

| Mark | Reg. No. Reg. Date | Goods/Services First Use in Commerce/Filing Basis |
|------|--------------------|--------------------------------------------------|
|      | 02-25-1997         | featuring ground and whole bean coffee; tea; cocoa; coffee and espresso beverages and beverages made with a base of coffee, espresso, and/or milk; powdered flavorings; flavoring syrups; baked goods, including muffins, scones, biscuits, cookies, pastries, cakes and breads; packaged foods; sandwiches and prepared foods; chocolate and confectionery items; granola; dried fruits; juices; soft drinks; electric appliances, namely, kettles, coffee makers, espresso makers and coffee grinders; housewares, non-electric appliances and related items, namely, insulated coffee and beverage cups (made of plastics and/or ceramics), insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers and non-electric plunger-style coffee makers; paper coffee filters; toys; books; T-shirts, caps, sweatshirts, jackets, aprons and other clothing items; retail outlet services featuring ground and whole bean coffee; tea; cocoa; coffee and espresso beverages and beverages made with a base of coffee, espresso, and/or milk; powdered flavoring; flavoring syrups; baked goods, including muffins, scones, biscuits, cookies, pastries, cakes and breads; packaged food; sandwiches and prepared foods; chocolate and confectionery items; granola; dried fruits; juices; soft drinks; electric appliances, namely, kettles, coffee makers, espresso makers and coffee grinders; housewares, non-electric appliances and related items, namely, insulated coffee and beverage cups (made of plastics and/or ceramics), |

| Mark | Reg. No. Reg. Date | Goods/Services First Use in Commerce/Filing Basis |
|------|--------------------|---------------------------------------------------|
| | | non-paper coasters, insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers and non-electric plunger-style coffee makers; toys; books; musical recordings; t-shirts, caps, sweatshirts, jackets, aprons and other clothing items; wholesale supply services featuring furniture; mail order services featuring ground and whole bean coffee and tea<br>First Use in Commerce: 03-29-1971<br><br>Class 43:  Restaurant, cafe and coffee house services<br>First Use in Commerce:  03-29-1971 |
| STARBUCKS | 2,073,104 06-24-1997 | Class 35: wholesale supply services featuring ground and whole bean coffee, tea, cocoa, coffee and espresso beverages and beverages made with a base of coffee, espresso, and/or milk, powdered flavorings, flavoring syrups, baked goods, including muffins, scones, biscuits, cookies, pastries, cakes and breads, packaged foods, sandwiches and prepared foods, chocolate and confectionery items, granola, dried fruits, juices, soft drinks, electric appliances, namely, kettles, coffee makers, espresso makers and coffee grinders, housewares, non-electric appliances and related items, namely, insulated coffee and beverage cups (made of plastics and/or ceramics), insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers and non-electric plunger-style coffee makers, paper coffee filters, toys, books, T-shirts, caps, sweatshirts, jackets, aprons and other clothing items; wholesale supply |

28

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use in Commerce/Filing Basis |
|------|------------------------|------------------------------------------------------|
| | | services featuring furniture; mail order services featuring ground and whole bean coffee and tea; retail outlets services featuring ground and whole bean coffee, tea, cocoa, coffee and espresso beverages and beverages made with a base of coffee, espresso, and/or milk, flavoring syrups, baked goods, including muffins, scones, biscuits, cookies, pastries, cakes and breads, packaged foods, sandwiches and prepared foods, chocolate and confectionery items, granola, dried fruits, juices, soft drinks, electric appliances, namely, kettles, coffee makers, espresso makers and coffee grinders, housewares, non-electric appliances and related items, namely, insulated coffee and beverage cups (made of plastics and/or ceramics), non-paper coasters, insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers and non-electric plunger-style coffee makers, toys, books, musical recordings, T-shirts, caps, sweatshirts, jackets, aprons and other clothing items<br>First Use in Commerce: 08-31-1991<br><br>Class 43:  Restaurant, cafe and coffee house services<br>First Use in Commerce:  08-31-1991 |
| STARBUCKS | 2,086,615<br>08-05-1997 | Class 30: ready-to-drink coffee, ready-to-drink coffee based beverages<br>First Use in Commerce: 05-20-1996<br><br>Class 32: coffee flavored soft drinks and syrups and extracts for making flavored soft drinks and milk based beverages<br>First Use in Commerce: 07-31-1995 |
| STARBUCKS | 2,091,940 | Class 30: flavored ices and frozen |

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use in Commerce/Filing Basis |
|---|---|---|
|  | 08-26-1997 | confections<br>First Use in Commerce: 03-30-1996 |
| STARBUCKS COFFEE | 2,102,737<br>10-07-1997 | Class 29: flavored milk and milk-based food beverages.<br>First Use in Commerce: 06-03-1996 |
| STARBUCKS COFFEE | 2,104,933<br>10-14-1997 | Class 30: flavored ices and frozen confections<br>First Use in Commerce: 12-31-1995 |
| STARBUCKS | 2,176,977<br>07-28-1998 | Class 11: electrical appliances, namely, espresso makers and coffee makers for domestic and commercial use.<br>First Use in Commerce: 11-01-1995 |
| STARBUCKS COFFEE | 2,178,662<br>08-04-1998 | Class 11: electrical appliances, namely, espresso makers and coffee makers for commercial use.<br>First Use in Commerce: 11-01-1995 |
|  | 2,184,259<br>08-25-1998 | Class 43: restaurant, cafe and coffee house services.<br>First Use in Commerce: 08-31-1991 |
| STARBUCKS COFFEE | 2,227,836<br>03-02-1999 | Class 43: restaurant, cafe and coffee house services.<br>First Use in Commerce: 08-31-1991 |
|  | 2,227,837<br>03-02-1999 | Class 35: wholesale distributorships, retail outlets featuring ground and whole bean coffee; tea; cocoa; coffee and espresso beverages and beverages made with a base of coffee, espresso, and/or milk; powdered flavorings; flavoring syrups; baked goods, including muffins, scones, biscuits, cookies, and ready-to-make mixes of the same; packaged foods; sandwiches and prepared foods; chocolate and confectionery items; dried fruits, juices; soft drinks; electric appliances, namely, kettles, coffee makers, espresso makers and coffee grinders; housewares, insulated coffee and beverage cups, non-paper coasters, insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers and non-electric plunger-style |

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use in Commerce/Filing Basis |
|---|---|---|
| | | coffee makers; paper and non-paper coffee filters; furniture; clocks; books; musical recordings;<br>First Use in Commerce: 08-31-1991 |
| STARBUCKS | 2,696,594<br>03-11-2003 | Class 29: milk and milk products, namely, flavored milk; flavoring syrups and liquid beverage mixes used to make milk-based food beverages; dairy-based food beverages<br>First Use in Commerce: 10-23-1987 |
| STARBUCKS | 3,235,732<br>05-01-2007 | Class 40: Coffee roasting and processing<br>First Use in Commerce: 12-31-1972 |
| STARBUCKS | 3,330,858<br>11-06-2007 | Class 35: Business administration; business management; franchising, namely, providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars; providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars<br>First Use in Commerce: 03-31-2004 |
| STARBUCKS | 3,298,944<br>09-25-2007 | Class 30: Coffee; tea; cocoa; prepared coffee and coffee-based beverages; prepared espresso and espresso-based beverages; beverages made of tea; powdered chocolate ((and vanilla)); flavoring syrups to add to beverages; baked goods, namely, muffins, scones, biscuits, cookies, pastries and breads; sandwiches; hot ready-to-eat fruit and whole grain based breakfast cereal; iced tea, chocolate food beverages not being dairy-based or vegetable based; chocolate food beverages not being dairy-based or vegetable based with |

4871-6047-8668, v. 2

| Mark | Reg. No.<br>Reg. Date | Goods/Services<br>First Use in Commerce/Filing Basis |
|---|---|---|
| | | coffee flavors; cocoa products, namely, cocoa mixes and cocoa powder; hot chocolate; cocoa beverages with milk; prepared cocoa and cocoa-based beverages; preparations for making chocolate or cocoa based drinks, namely, powdered hot chocolate mix and powdered hot cocoa mix; chocolate and candy, namely, chocolates, chocolate bars, chocolate-covered coffee beans, chocolate-covered fruits, chocolate-covered nuts, chocolate-covered dried fruits, chocolate-covered crackers and chocolate toppings.<br>First Use in Commerce: 03-31-2004 |
| STARBUCKS | 3,699,649<br>10-20-2009 | Class 32: Fruit drinks and soft drinks containing fruit juices; fruit juices, non-alcoholic fruit and juice based beverages; frozen fruit beverages and frozen fruit-based beverages; beverage concentrates and syrups for making non-alcoholic frozen blended beverages<br>First Use in Commerce: 07-15-2008 |
| STARBUCKS | 4,429,111<br>11-05-2013 | Class 5: Nutritionally fortified beverages; vitamin fortified beverages.<br>First Use in Commerce: 06-30-2008 |
| STARBUCKS | 4,664,181<br>12-30-2014 | Class 30: coffee pods contained in single-serve units for coffee brewing machines; espresso pods contained in single-serve units for coffee brewing machines.<br>First Use in Commerce: 12-21-2007 |

Copies of the foregoing United States Trademark Registrations and accompanying TSDR records reflecting their current status are attached hereto as **Exhibit F** and incorporated herein by reference.

4871-6047-8668, v. 2

27.     The goods and services identified above in connection with the Siren Logo Registrations and the STARBUCKS Registrations are referred to as the "Starbucks Goods and Services."

28.     Together, the Starbucks Siren Logos used in the United States in connection with Starbucks Goods and Services are collectively referred to herein as the "STARBUCKS Siren Marks."

29.     Together, the STARBUCKS Marks used in the United States in connection with Starbucks Goods and Services are collectively referred to herein as the "STARBUCKS Word Marks."

30.     The Siren Logo Registrations and STARBUCKS Registrations have become incontestable under 15 U.S.C. § 1065.

### *Starbuds' Willful Infringement*

31.     In or around May 2023, Starbucks became aware that a transient marijuana business operating from a re-purposed food truck and identified as "STARBUDS FLOWERS" was distributing, marketing, selling, and delivering marijuana and other related cannabis products in New York City.   Starbucks also became aware that the owner of the truck was advertising and marketing its marijuana and cannabis delivery services at the website www.starbudsflowers.com that previously displayed a photo of the STARBUDS FLOWERS re-purposed food truck.

32.     A modified Infringing STARBUDS Logo (with the concentric circles removed) was also displayed on the re-purposed food truck's website to advertise and market its marijuana and cannabis delivery services.   A screenshot of this website is below.



33.    The owner of the re-purposed food truck further advertised and marketed a marijuana product displaying the Infringing STARBUDS Logo identified as "Starbuds Prerolls" on the website, as depicted below.



34.     In or around August 2023, Starbucks became aware that the "STARBUDS FLOWERS" marijuana business and associated website was operated by Starbuds. Starbucks also became aware that in addition to delivering marijuana and cannabis products, Starbuds also appeared to be using the re-purposed food truck as a retail storefront for the sale of marijuana and cannabis products directly from the parked truck.

35.     The Starbuds re-purposed food truck is shown below. Starbuds' truck prominently displays the mark STARBUDS (the "STARBUDS Mark") and the Infringing STARBUDS Logo across all sides of the truck.

  







36.     Starbucks, by using its Infringing STARBUDS Logo on its re-purposed food truck, website, and marijuana products, incorporates the materials protected by the Starbucks Copyrights and clearly trades on the recognition of the extensive consumer recogniton of Starbucks and its STARBUCKS Trademarks:

 

37




37.     The STARBUDS Mark is confusingly similar and nearly identical to the famous STARBUCKS Word Marks and is clearly intended to be a slight variation of the famous and well-known STARBUCKS Word Marks.   The word STARBUDS sounds very similar to STARBUCKS, as they are both two-syllable marks starting with "STAR."  In place of the term "BUCKS," Applicant has substituted the phonetically similar term "BUDS," which differs only by two internal letters, shares a similar pronunciation, and is likely to sound very similar when spoken. Consumers viewing or hearing the STARBUDS Mark will not be encountering the mark side-by-side with the STARBUCKS Word Marks, thus the slight differences will be less apparent. Given their near identical appearances, the marks STARBUDS and STARBUCKS convey the same overall commercial impression.

38.     In addition, STARBUDS is the dominant word in the STARBUDS FLOWERS name because STARBUDS has prominence as the first word and consumers are more likely to focus on the first word in a trademark or service mark.

39.     Further, Starbuds dilutes the highly distinctive and well-known STARBUCKS Siren Marks through its Infringing STARBUDS Logo.  Starbuds' distortion shows the siren from the STARBUCKS Siren Marks holding a marijuana cigarette with a cloud of smoke coming out of her mouth (among other things).

38

40.    The dilution also involves use of the business name "STARBUDS FLOWERS" in the Infringing STARBUDS Logo.  The prominent placement of the STARBUDS Mark at the top of the Infringing STARBUDS Logo is an intentional effort by Starbuds to mimic the Starbucks intellectual property and trade upon the Starbucks goodwill.

41.    Starbucks has no control over the quality of the goods and services provided to consumers under the confusingly similar and nearly identical STARBUDS Mark.

42.    Any consumer perception of the lack of quality or defects in goods and services offered under the Infringing STARBUDS Logo and STARBUDS Mark is likely to be associated with the STARBUCKS Trademarks due to the similarities between the Infringing STARBUDS Logo and STARBUDS Mark on the one hand and the STARBUCKS Siren Marks and STARBUCKS Word Marks on the other.

43.    Upon information and belief, Starbuds intended to copy the materials protected by the Starbucks Copyrights, the famous STARBUCKS Word Marks and STARBUCKS Siren Marks to capitalize on the success and popularity of that intellectual property.

44.    Upon information and belief, Starbuds' use of the Infringing STARBUDS Logo and STARBUDS Mark diminish the distinctiveness of and thus dilute by blurring the famous STARBUCKS Word Marks and STARBUCKS Siren Marks.

45.    Upon information and belief, Starbuds' use of the Infringing STARBUDS Logo and STARBUDS Mark is intended to create an association with the famous STARBUCKS Word Marks and STARBUCKS Siren Marks, the reputation of the STARBUCKS Word Marks and STARBUCKS Siren Marks is harmed by that association, thus the similar STARBUDS Logo and STABUDS Mark dilutes by tarnishing those famous marks.

39

*Starbucks Efforts to Enforce against Starbuds' Illegal Activities*

46.     Soon after obtaining a mailing address for the owner of Starbuds, on August 17, 2023, counsel for Starbucks wrote a letter to demand that Starbuds cease any further use of the Infringing STARBUDS Logo and the STARBUDS name and mark.  A true and correct copy of the August 17, 2023 letter from Starbucks to Starbuds is attached hereto as **Exhibit G** and incorporated herein by reference.

47.     Starbuds did not respond to the August 17, 2023 cease and desist letter.

48.     On September 22, 2023, counsel for Starbucks again wrote to Starbuds demanding that it cease and desist its use of the Infringing STARBUDS Logo and STARBUDS Mark.  A true and correct copy of the September 22, 2023 letter to Starbuds is attached hereto as **Exhibit H** and incorporated herein by reference.

49.     Starbuds again failed to respond this letter.

50.     In or around January 2024, Starbucks determined that Starbuds was continuing to operate its marijuana business from the re-purposed food truck displaying the Infringing STARBUDS Logo and STARBUDS Mark.

51.     On January 29, 2024, counsel for Starbucks submitted a takedown notice of copyright infringement to the hosting service provider for Starbuds' website under the Digital Millennium Copyright Act (DMCA) and successfully removed infringing use of the Starbucks Copyrights and the STARBUCKS Siren Marks from Starbuds' website at www.starbudsflowers.com.  A true and correct copy of the Starbucks January 29, 2024 DMCA takedown notice and response from the host is attached hereto as **Exhibit I** and incorporated herein by reference.

52.     On February 7, 2024, counsel for Starbucks sent another follow-up letter to Starbuds, noting the successful DMCA takedown and again demanding that it cease and desist its infringing use of the Infringing STARBUDS Logo and STARBUDS Mark.  A true and correct copy of the February 7, 2024 letter to Starbuds is attached hereto as **Exhibit J** and incorporated herein by reference.

53.     Starbuds did not respond to the February 7, 2024 letter.

54.     On or about March 11, 2024, legal counsel for Starbucks submitted a letter to the New York State Office of Cannabis Management (OCM) through the OCM online portal reporting Starbuds' business activities and reporting that Starbuds appeared to be operating an unlicensed mobile marijuana business.  A true and correct copy of March 11, 2024 letter from Starbucks to OCM is attached hereto as **Exhibit K** and incorporated herein by reference.

55.     Starbucks did not receive a response from OCM to its March 11, 2024 letter.

56.     As of the date of this Complaint, Starbuds continues to infringe the Starbucks Copyrights, the STARBUCKS Siren Marks, and the STARBUCKS Word Marks as described above.

57.     Starbucks has not licensed or otherwise authorized Starbuds to use its Starbucks Copyrights, the STARBUCKS Siren Marks or the STARBUCKS Word Marks.

58.     Upon information and belief, before adopting the Infringing STARBUDS Logo and STARBUDS Mark, Starbuds knew of the Starbucks Copyrights and the goodwill and market value of the STARBUCKS Siren Marks and the STARBUCKS Word Marks, and knew that Starbucks has exclusive and senior rights in those marks and the materials protected by the Starbucks Copyrights.

59.     Upon information and belief, Starbuds intentionally chose to copy the Starbucks Copyrights by creating the substantially similar Infringing STARBUDS Logo.

60.     Upon information and belief, Starbuds also intentionally chose to copy the STARBUCKS Siren Marks, and the STARBUCKS Word Marks in utilizing the Infringing STARBUDS Logo to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association between Starbucks and Starbuds, or to cause confusion to customers about the origin, sponsorship or approval of Starbuds by Starbucks.

61.     Upon information and belief, Starbuds has made significant sales under the Infringing STARBUDS Logo and STARBUDS Mark since its first use of those marks.

62.     As a direct and proximate result of Starbuds' unauthorized conduct, Starbucks has been and will be harmed by confusion created among consumers as to Starbuds' affiliation, connection or association with Starbucks, or as to the origin, sponsorship or approval of Starbuds' goods or services by Starbucks.  This harm cannot be adequately measured or fully remedied by monetary damages.

63.     As a result of Starbuds' intentional misappropriation of the Starbucks Copyrights, the STARBUCKS Siren Marks, and the STARBUCKS Word Marks, Starbucks has suffered and will continue to suffer irreparable injury.

**COUNT I**
**FEDERAL COPYRIGHT INFRINGEMENT OF THE**
**STARBUCKS COFFEE SIREN COPYRIGHT**
**U.S. COPYRIGHT REG. NO. VA 875-932**
**(17 U.S.C. § 501(a))**

64.     Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

42

65.     At all relevant times, Starbucks has owned the Starbucks Coffee Siren Copyright. Starbucks enjoys exclusive rights with respect to the Starbucks Coffee Siren Copyright, including the exclusive right to reproduce, distribute, display, and create derivative works based on the same.

66.     Starbuds is not authorized to reproduce, publish, distribute copies of, display, or prepare derivative works based on all or any portion of materials protected by the Starbucks Coffee Siren Copyright. Starbuds has used the Starbucks Coffee Siren Copyright on its website and re-purposed food truck to advertise, market, promote, distribute, sell, and deliver marijuana, and other related cannabis products. As illustrated in paragraph 36, the Infringing STARBUDS Logo and variations thereof are virtually identical to the materials protected by the Starbucks Coffee Siren Copyright.

67.     Starbuds' unauthorized copying, reproducing, displaying, and use of the materials protected by the Starbucks Coffee Siren Copyright without consent or authorization on its variety of goods constitutes copyright infringement pursuant to 17 U.S.C. § 501, *et seq.* because Starbuds' website, truck, and/or marijuana products incorporate copies of the Starbucks Coffee Siren Copyright and/or derivative works. Moreover, Starbuds' works are strikingly and/or substantially similar to the materials protected by the Starbucks Coffee Siren Copyright.

68.     Starbuds had access to the materials protected by the Starbucks Coffee Siren Copyright due to the widespread promotion and use of that copyright and Starbuds' copying is intentional.

69.     Starbuds' copyright infringement has caused Starbucks immediate and irreparable harm and has been willful. Starbucks has no adequate remedy at law.

70.     Starbucks is entitled to injunctive relief prohibiting Starbuds from using the materials protected by the Starbucks Coffee Siren Copyright, or any derivative thereof, in connection with advertising, marketing, promoting, distributing, selling, and delivering marijuana, and other related cannabis products, including on its website and re-purposed food truck, as authorized by 17 U.S.C. § 502.

71.     Starbucks is further entitled to recover from Starbuds statutory damages, as authorized by 17 U.S.C. § 504(c).

72.     Starbucks is entitled to have all of Starbuds' print and electronic copies of the materials protected by the Starbucks Coffee Siren Copyright or their unlawful derivatives be impounded as authorized by 17 U.S.C. § 503.

**COUNT II**
**FEDERAL COPYRIGHT INFRINGEMENT OF THE**
**40TH ANNIVERSARY SIREN COPYRIGHT**
**U.S. COPYRIGHT REG. NO. VA 1-768-520**
**(17 U.S.C. § 501(a))**

73.     Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

74.     At all relevant times, Starbucks has owned the 40th Anniversary Siren Copyright. Starbucks enjoys exclusive rights with respect to the 40th Anniversary Siren Copyright, including the exclusive right to reproduce, distribute, display, and create derivative works based on the same.

75.     Starbuds is not authorized to reproduce, publish, distribute copies of, display, or prepare derivative works based on all or any portion of materials protected by the 40th Anniversary Siren Copyright. Starbuds has used the 40th Anniversary Siren Copyright on its website and re-purposed food truck to advertise, market, promote, distribute, sell, and deliver

44

marijuana, and other related cannabis products. As illustrated in paragraph 36, the Infringing STARBUD Logo and variations thereof are virtually identical to the materials protected by the 40th Anniversary Siren Copyright.

76.     Starbuds' unauthorized copying, reproducing, displaying, and use of the materials protected by the 40th Anniversary Siren Copyright without consent or authorization on its variety of goods constitutes copyright infringement pursuant to 17 U.S.C. § 501, *et seq.* because Starbuds' website, truck, and marijuana products incorporate copies of the 40th Anniversary Siren Copyright and/or derivative works. Moreover, Starbuds' works are strikingly and/or substantially similar to the materials protected by the 40th Anniversary Siren Copyright.

77.     Starbuds had access to the materials protected by the 40th Anniversary Siren Copyright due to the widespread promotion and use of that copyright and Starbuds' copying is intentional.

78.     Starbuds' copyright infringement has caused Starbucks immediate and irreparable harm and has been willful. Starbucks has no adequate remedy at law.

79.     Starbucks is entitled to injunctive relief prohibiting Starbuds from using the materials protected by the 40th Anniversary Siren Copyright, or any derivative thereof, in connection with advertising, marketing, promoting, distributing, selling, and delivering marijuana, and other related cannabis products, including on its website and re-purposed food truck, as authorized by 17 U.S.C. § 502.

80.     Starbucks is further entitled to recover from Starbuds statutory damages, as authorized by 17 U.S.C. § 504(c).

4871-6047-8668, v. 2

81.     Starbucks is entitled to have all of Starbuds' print and electronic copies of the materials protected by the 40th Anniversary Siren Copyright or their unlawful derivatives be impounded as authorized by 17 U.S.C. § 503.

<u>COUNT III</u>
<u>FEDERAL TRADEMARK INFRINGEMENT OF THE REGISTERED</u>
<u>STARBUCKS SIREN MARKS (15 U.S.C. § 1114)</u>

82.     Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

83.     Starbucks owns valid and enforceable rights in the STARBUCKS Siren Marks in connection with the Starbucks Goods and Services by virtue of its extensive use, promotion, and advertisement of the marks, and has possessed such rights at all times material hereto.

84.     Starbucks owns several valid and incontestable registrations for its STARBUCKS Siren Marks as outlined in paragraph 25.

85.     The registrations are *prima facie* evidence of the validity of the STARBUCKS Siren Marks and of Starbucks ownership of the STARBUCKS Siren Marks.

86.     Starbucks use of its STARBUCKS Siren Marks in connection with the Starbucks Goods and Services predates any use by Starbuds.

87.     Starbuds knowingly and intentionally markets, promotes, advertises, offers to provide and provides services under the Infringing STARBUDS Logo.

88.     Starbuds has been informed and is fully aware of Starbucks extensive prior use of the STARBUCKS Siren Marks.

89.     Starbucks has not authorized, licensed, or otherwise condoned or consented to Starbuds' use of the STARBUCKS Siren Marks.

4871-6047-8668, v. 2

90.     Starbuds' use of the Infringing STARBUDS Logo is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Starbuds with Starbucks among consumers, or as to the origin, sponsorship or approval of Starbuds' goods or services by Starbucks.

91.     Starbuds' actions constitute trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

92.     Though Starbuds had prior knowledge of Starbucks, its STARBUCKS Siren Marks, as well as the Starbucks Goods and Services, and received notice from Starbucks that they were infringing the STARBUCKS Siren Marks, Starbuds continues to intentionally infringe the STARBUCKS Siren Marks.

93.     Starbuds' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

94.     Starbuds' conduct has occurred in interstate commerce and substantially impacts interstate commerce.

95.     As a direct and proximate result of Starbuds' conduct, Starbucks has suffered damage to the valuable STARBUCKS Siren Marks, as well as harm to its valuable goodwill and reputation.

96.     Starbuds' conduct described herein has caused and will continue to cause irreparable damage to Starbucks and confuse the public unless enjoined by this Court.

97.     Starbucks is entitled to recover disgorgement of Starbuds' profits and the costs of the action and, to the extent the recovery is inadequate, enhancement of the recovery according to the circumstances of the case, all under 15 U.S.C. § 1117(a) and 15 U.S.C. § 1125 (c)(5).

98.     Starbuds' willful actions have caused and will continue to cause Starbucks irreparable harm and will, unless enjoined, continue to do so, thus Starbucks is entitled to the entry of a permanent injunction under 15 U.S.C. § 1117(a) and 15 U.S.C. § 1125 (c)(5).

**COUNT IV**
**FEDERAL TRADEMARK INFRINGEMENT OF THE REGISTERED**
**STARBUCKS WORD MARKS (15 U.S.C. § 1114)**

99.     Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

100.     Starbucks owns valid and enforceable rights in the STARBUCKS Word Marks in connection with the Starbucks Goods and Services by virtue of its extensive use, promotion, and advertisement of the marks, and has possessed such rights at all times material hereto.

101.     Starbucks owns numerous valid and incontestable registrations for its STARBUCKS Word Marks as outlined in paragraph 26.

102.     The registrations are *prima facie* evidence of the validity of the STARBUCKS Word Marks of Starbucks ownership of the STARBUCKS Word Marks.

103.     Starbucks use of its STARBUCKS Word Marks in connection with the Starbucks Goods and Services predates any use by Starbuds.

104.     Starbuds knowingly and intentionally markets, promotes, advertises, offers to provide and provides the services under the STARBUDS Mark.

105.     Starbuds has been informed and is fully aware of Starbucks extensive prior use of the STARBUCKS Word Marks.

106.     Starbucks has not authorized, licensed, or otherwise condoned or consented to Starbuds' use of the STARBUCKS Word Marks.

48

107. Starbuds' use of the STARBUDS Mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Starbuds with Starbucks among consumers, or as to the origin, sponsorship or approval of Starbuds' goods or services by Starbucks. This confusion is likely to exist whether or not an actual sale is completed as a result of the confusion or if the mistake is corrected before a sale occurs.

108. Starbuds' actions constitute trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

109. Though Starbuds had prior knowledge of Starbucks, its STARBUCKS Word Marks, as well as the Starbucks Goods and Services, and received notice from Starbucks that they were infringing the STARBUCKS Word Marks, Starbuds continues to intentionally infringe the STARBUCKS Word Marks.

110. Starbuds' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

111. Starbuds' conduct has occurred in interstate commerce and substantially impacts interstate commerce.

112. As a direct and proximate result of Starbuds' conduct, Starbucks has suffered damage to the valuable STARBUCKS Word Marks, as well as harm to its valuable goodwill and reputation.

113. Starbuds' conduct described herein has caused and will continue to cause irreparable damage to Starbucks and confuse the public unless enjoined by this Court.

114. Starbucks is entitled to recover disgorgement of Starbuds' profits and the costs of the action and, to the extent the recovery is inadequate, enhancement of the recovery according to the circumstances of the case, all under 15 U.S.C. § 1117(a) and 15 U.S.C. § 1125 (c)(5).

115.     Starbuds' willful actions have caused and will continue to cause Starbucks irreparable harm and will, unless enjoined, continue to do so, thus Starbucks is entitled to the entry of a permanent injunction under 15 U.S.C. § 1117(a) and 15 U.S.C. § 1125 (c)(5).

**COUNT V**
**FEDERAL TRADEMARK DILUTION OF THE STARBUCKS SIREN MARKS BY BLURRING (15 U.S.C. § 1125(c))**

116.     Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

117.     Through exclusive, continuous and extensive use of the STARBUCKS Siren Marks, the STARBUCKS Siren Marks have become famous and highly distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). *See also Starbucks Corp. v. Blood,* Civil No. 7:15-cv-00206-WLS, Dkt. No. 14 (M.D. Ga. Mar. 28, 2017); and *Starbucks Corp. v. Heller*, No. CV 14-01383 MMM MRWX, 2014 WL 6685662, at *6 (C.D. Cal. Nov. 26, 2014).

118.      For over 50 years, Starbucks has extensively and exclusively used variations of its STARBUCKS Siren Marks throughout the United States.  Through its extensive use, Starbucks has made substantial sales of Starbucks Goods and Services in connection with the STARBUCKS Siren Marks, contributing to their fame.

119.     The registered and incontestable STARBUCKS Siren Marks were famous before any use of the Infringing STARBUDS Logo.

120.     Starbuds uses the Infringing STARBUDS Logo in commerce.

121.     Starbuds' use of the Infringing STARBUDS Logo is likely to diminish the distinctiveness of and thus cause dilution by blurring of the famous STARBUCKS Siren Marks.

50

122. Starbucks is entitled to recover disgorgement of Starbuds' profits and the costs of the action and, to the extent the recovery is inadequate, enhancement of the recovery according to the circumstances of the case, all under 15 U.S.C. § 1117(a) and 15 U.S.C. § 1125(c)(5).

123. Starbuds trademark dilution is willful. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

124. Starbuds' willful actions have caused and will continue to cause Starbucks irreparable harm and will, unless enjoined, continue to do so; thus, Starbucks is entitled to the entry of a permanent injunction under 15 U.S.C. § 1116 and under 15 U.S.C. § 1125(c)(5).

**COUNT VI**
**FEDERAL TRADEMARK DILUTION OF THE STARBUCKS WORD MARKS**
**BY BLURRING (15 U.S.C. § 1125(c))**

125. Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

126. Through exclusive, continuous and extensive use of the STARBUCKS Word Marks, the STARBUCKS Word Marks have become famous and highly distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and as found by courts. *See also Starbucks Corp. v. Blood,* Civil No. 7:15-cv-00206-WLS, Dkt. No. 14 (M.D. Ga. Mar. 28, 2017); *Starbucks Corp. v. Lundberg,* No. CV 02–948–HA, 2005 WL 3183858, *3 (D. Or. Nov.29, 2005); and *Starbucks Corp. v. Heller*, No. CV 14-01383 MMM MRWX, 2014 WL 6685662, at *6 (C.D. Cal. Nov. 26, 2014). For over 50 years, Starbucks has extensively and exclusively used its STARBUCKS Word Marks throughout the United States. Through its extensive use, Starbucks has made substantial sales of Starbucks Goods and Services in connection with the STARBUCKS Word Marks, contributing to their fame.

51

127.     The registered and incontestable STARBUCKS Word Marks were famous before any use of the STARBUDS Mark.

128.     Starbuds uses the STARBUDS Mark in commerce.

129.     Starbuds' use of the STARBUDS Mark is likely to diminish the distinctiveness of and thus cause dilution by blurring of the famous STARBUCKS Word Marks.

130.     Starbucks is entitled to recover disgorgement of Starbuds' profits and the costs of the action and, to the extent the recovery is inadequate, enhancement of the recovery according to the circumstances of the case, all under 15 U.S.C. § 1117(a) and 15 U.S.C. § 1125(c)(5).

131.     Starbuds' trademark dilution is willful. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

132.     Starbuds' willful actions have caused and will continue to cause Starbucks irreparable damage and will, unless enjoined, continue to do so; thus, Starbucks is entitled to the entry of a permanent injunction under 15 U.S.C. § 1116 and under 15 U.S.C. § 1125(c)(5).

## COUNT VII
## FEDERAL TRADEMARK DILUTION OF THE STARBUCKS SIREN MARKS BY TARNISHMENT, 15 U.S.C. § 1125(c)

133.     Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

134.     Through exclusive, continuous and extensive use of the STARBUCKS Siren Marks, the STARBUCKS Siren Marks have become famous and highly distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and as found by courts.  *See also Starbucks Corp. v. Blood,* Civil No. 7:15-cv-00206-WLS, Dkt. No. 14 (M.D. Ga. Mar. 28, 2017); and *Starbucks Corp. v. Heller*, No. CV 14-01383 MMM MRWX, 2014 WL 6685662, at *6 (C.D. Cal. Nov. 26, 2014).  For over 50 years, Starbucks has extensively and exclusively used

its STARBUCKS Siren Marks throughout the United States. Through its extensive use, Starbucks has made substantial sales of Starbucks Goods and Services in connection with the STARBUCKS Siren Marks, contributing to their fame.

135.    The registered and incontestable STARBUCKS Siren Marks were famous before any use of the Infringing STARBUDS Logo.

136.    Starbuds uses the Infringing STARBUDS Logo in commerce.

137.    Starbuds' use of the Infringing STARBUDS Logo is likely to create a harmful association with and so cause dilution by tarnishment of the famous STARBUCKS Siren Marks.

138.    Starbuds has used and continues to use in commerce the Infringing STARBUDS Logo that portrays the siren in an unwholesome or unsavory context as engaging in a behavior considered offensive by some consumers and likely to evoke unflattering thoughts about the products and services Starbucks offers under the STARBUCKS Siren Marks.

139.    Starbuds' trademark dilution is willful. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

140.    Starbuds' willful actions have caused and will continue to cause Starbucks irreparable harm and will, unless enjoined, continue to do so; thus, Starbucks is entitled to the entry of a permanent injunction under 15 U.S.C. § 1116 and under 15 U.S.C. § 1125(c)(5).

## COUNT VIII
## FEDERAL TRADEMARK DILUTION OF THE STARBUCKS WORD MARKS BY TARNISHMENT, 15 U.S.C. § 1125(c)

141.    Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

142.    Through exclusive, continuous and extensive use of the STARBUCKS Word Marks, the STARBUCKS Word Marks have become famous and highly distinctive within the

53

meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and as found by courts. *See also Starbucks Corp. v. Blood,* Civil No. 7:15-cv-00206-WLS, Dkt. No. 14 (M.D. Ga. Mar. 28, 2017); *Starbucks Corp. v. Lundberg,* No. CV 02–948–HA, 2005 WL 3183858, *3 (D. Or. Nov.29, 2005); and *Starbucks Corp. v. Heller*, No. CV 14-01383 MMM MRWX, 2014 WL 6685662, at *6 (C.D. Cal. Nov. 26, 2014). For over 50 years, Starbucks has extensively and exclusively used its STARBUCKS Siren Marks throughout the United States. Through its extensive use, Starbucks has made substantial sales of Starbucks Goods and Services in connection with the STARBUCKS Siren Marks, contributing to their fame.

143.    The registered and incontestable STARBUCKS Word Marks were famous before any use of the STARBUDS Mark. *See id.*

144.    Starbuds uses the STARBUDS Mark in commerce.

145.    Starbuds' use of the STARBUDS Mark is likely to create a harmful association with and so dilute by tarnishment the famous STARBUCKS Word Marks.

146.    Starbuds used and continues to use in commerce the STARBUDS Mark to offer for sale and sell goods and related services that are inferior.

147.    Starbuds' trademark dilution is willful. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

148.    Starbuds' willful actions have caused and will continue to cause Starbucks irreparable harm and will, unless enjoined, continue to do so; thus, Starbucks is entitled to the entry of a permanent injunction under 15 U.S.C. § 1116 and under 15 U.S.C. § 1125(c)(5).

## COUNT IX
## TRADEMARK DILUTION OF THE STARBUCKS SIREN MARKS
## BY BLURRING UNDER NEW YORK LAW
## N.Y. GEN. BUS. LAW § 360-L

149.     Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

150.     Starbucks is the owner of the STARBUCKS Siren Marks, as alleged in this Complaint.

151.     The Starbucks Siren Marks are distinctive and have acquired secondary meaning.

152.     Starbuds' unauthorized use of the Infringing STARBUDS Logo that is virtually identical and/or or substantially similar to the STARBUCKS Siren Marks began after the STARBUCKS Siren Marks became distinctive and acquired secondary meaning.

153.     By its acts alleged herein, Starbuds and its Infringing STARBUDS Logo are likely to dilute by blurring the distinctive quality of the STARBUCKS Siren Marks by destroying the exclusive association between the STARBUCKS Siren Marks and the Starbucks Goods and Services, in violation of N.Y. Gen. Bus. Law § 360-l.

154.     Upon information and belief, Starbuds acted with predatory intent in its adoption and use of the Infringing STARBUDS Logo.

155.     By its acts alleged herein, Starbuds is causing irreparable injury to Starbucks and its respective goodwill and reputation, and will continue to both damage Starbucks and deceive the public unless enjoined by this Court.  Starbucks has no adequate remedy at law.

4871-6047-8668, v. 2

### COUNT X
### TRADEMARK DILUTION OF THE STARBUCKS WORD MARKS
### BY BLURRING UNDER NEW YORK LAW
### N.Y. GEN. BUS. LAW § 360-L

156.    Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

157.    Starbucks is the owner of the STARBUCKS Word Marks, as alleged in this Complaint.

158.    The Starbucks Word Marks are distinctive and have acquired secondary meaning.

159.    Starbuds' unauthorized use of the STARBUDS Mark is virtually identical and/or substantially similar to the STARBUCKS Word Marks and began after the STARBUCKS Word Marks became distinctive and have acquired secondary meaning.

160.    By its acts alleged herein, Starbuds and its STARBUDS Mark are likely to dilute by blurring the distinctive quality of the STARBUCKS Word Marks by destroying the exclusive association between the STARBUCKS Word Marks and the Starbucks Goods and Services, in violation of N.Y. Gen. Bus. Law § 360-l.

161.    Upon information and belief, Starbuds acted with predatory intent in its adoption and use of the STARBUDS Mark.

162.    By its acts alleged herein, Starbuds is causing irreparable injury to Starbucks and its respective goodwill and reputation, and will continue to both damage Starbucks and deceive the public unless enjoined by this Court.  Starbucks has no adequate remedy at law.

4871-6047-8668, v. 2

**COUNT XI**
**TRADEMARK DILUTION OF THE STARBUCKS SIREN MARKS**
**BY TARNISHMENT UNDER NEW YORK LAW**
**N.Y. GEN. BUS. LAW § 360-L**

163.     Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

164.     Starbucks is the owner of the STARBUCKS Siren Marks.

165.     The STARBUCKS Siren Marks are distinctive.

166.     Starbuds' unauthorized use of the Infringing STARBUDS Logo that is virtually identical and/or substantially similar to the STARBUCKS Siren Marks began after the STARBUCKS Siren Marks became well-known and distinctive.

167.     By its acts alleged herein, Starbuds has diluted and will, unless enjoined, continue to dilute and is likely to tarnish, does tarnish, and will continue to tarnish the STARBUCKS Siren Marks by causing a negative and unsavory association between the Infringing STARBUDS Logo by associating them with goods and related services of an inferior quality offered for sale and sold in connection therewith, in violation of N.Y. Gen. Bus. Law § 360-l.

168.     By its acts alleged herein, Starbuds is causing irreparable injury to Starbucks and its respective goodwill and reputation, and will continue to both damage Starbucks and deceive the public unless enjoined by this Court.  Starbucks has no adequate remedy at law.

**COUNT XII**
**TRADEMARK DILUTION OF THE STARBUCKS WORD MARKS BY**
**TARNISHMENT UNDER NEW YORK LAW**
**N.Y. GEN. BUS. LAW § 360-L**

169.     Starbucks realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

170.     Starbucks is the owner of the STARBUCKS Word Marks.

171.    The STARBUCKS Word Marks are distinctive.

172.    Starbuds' unauthorized use of the STARBUDS Mark that is virtually identical and/or substantially similar to the STARBUCKS Word Marks began after the STARBUCKS Word Marks became well-known and distinctive.

173.    By its acts alleged herein, Starbuds has diluted and will, unless enjoined, continue to dilute and is likely tarnish, does tarnish, and will continue to tarnish the STARBUCKS Word Marks by associating them with goods and related services of an inferior quality offered for sale and sold in connection therewith, in violation of N.Y. Gen. Bus. Law § 360-l.

174.    By its acts alleged herein, Starbuds is causing irreparable injury to Starbucks and its respective goodwill and reputation, and will continue to both damage Starbucks and deceive the public unless enjoined by this Court.  Starbucks has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Starbucks respectfully requests and prays that the Court:

A.    Enter judgment in Starbucks favor and against Starbuds on all counts of the Complaint;

B.    Determine Starbuds has infringed the Starbucks Copyrights in violation of the U.S. Copyright laws;

C.    Determine that Starbuds willfully violated the Lanham Act, and that Starbuds is liable to Starbucks for such violations;

D.    Determine that Starbuds has engaged in dilution by blurring and tarnishment under New York law, N.Y. Gen. Bus. Law § 360-L;

E.    Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

F.    Under all claims for relief, issue permanent injunction enjoining Starbuds and any of its officers, employees, agents, successors and assigns, and all those in active concert and participation with Starbuds, and each of them who receives notice directly or otherwise of such injunctions:

4871-6047-8668, v. 2

1.    restraining Starbuds, its agents, servants, employees, successors and assigns and all others in concert and privy with Starbuds, from using the Starbucks Copyrights;

2.    from using in any manner the STARBUCKS Siren Marks and STARBUCKS Word Marks and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the STARBUCKS Siren Marks and STARBUCKS Word Marks so as to be likely to cause dilution by blurring or tarnishment, confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

3.    from further unlawfully trading upon and misappropriating the goodwill and reputation of Starbucks; and

4.    from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

G.    Order Starbuds to deliver up for destruction all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, or other materials in its possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the Infringing STARBUDS Logo or STARBUDS Mark, or any variations thereof, or which constitute and/or bear any other device, representation or statement in violation of the injunction herein requested by Starbucks, and that Starbuds be ordered to deliver up for destruction all means of making the same;

H.    Order Starbuds to immediately and completely remove from its delivery vehicles the Infringing STARBUDS Logo, or any variations thereof, or which constitute and/or bear any other device, representation or statement in violation of the injunction herein requested by Starbucks, and that Starbuds be ordered to provide proof of same;

I.    Order Starbuds to file with the Court and serve on Starbucks, within thirty (30) days after service on any of them of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in complete detail the manner and form in which Starbuds has complied with the injunction;

J.    In accordance with 15 U.S.C. § 1118, order Starbuds to deliver to Starbucks, at Starbuds' expense, for destruction or other disposition, all products, including, without limitation, all labels, packaging, signs, prints, advertisements, promotional, and other materials, incorporating, bearing, or displaying a trademark confusingly similar to the aforementioned trademarks of Starbucks or which otherwise violate 15 U.S.C. §§ 1114 and 1125(a), in the possession, custody, or control of Starbuds, as well as any reproduction, counterfeit, copy, or colorable imitation thereof, and all other materials or means of making the same;

K.    Order that Starbuds account for and pay over to Starbucks all of Starbuds' profits

derived from its violation of 15 U.S.C. §§ 1114 and 1125(a) together with legal interest from the date of accrual thereof;

L.      Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that Starbuds pay over to Starbucks such additional amounts as the court shall find to be just;

M.     Order that Starbuds to pay Starbucks reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

N.      Require Starbuds to pay to Starbucks statutory and other damages, as well as Starbucks costs and attorneys' fees, as provided in the U.S. Copyright Act;

O.      Order that Starbuds provide any and all records necessary to account for and pay over to Starbucks all gains, profits, and advantages derived from its violation of 17 U.S.C. § 501(a) and 15 U.S.C. § 1114, and also pay to Starbucks the damages which Starbucks has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

P.      Award interest, including pre-judgment interest on the foregoing sums; and

Q.      Grant Starbucks any other relief as the Court deems necessary and proper.

*/Signatures on following page/*

Dated:  June 28, 2024

Respectfully submitted,

By:  ___/s/ *Anthony J. Davis*___
Anthony J. Davis
NY Bar # 2537439
SDNY Bar Id. AD1104
Santomassimo Davis LLP
450 Seventh Avenue, Suite 2205
New York, New York 10123
(201) 712-1616
adavis@ogcsolutions.com

By:  /s/ *Leigh C. Taggart*___
Leigh C. Taggart
HONIGMAN LLP
39400 Woodward Avenue
Suite 101
Bloomfield Hills, MI 48304-5151
Telephone:  248-566-8300
Facsimile:  248-566-8315
ltaggart@honigman.com

Yafeez S. Fatabhoy
Amanda M. Blackburn
HONIGMAN LLP
315 East Eisenhower Parkway
Ann Arbor, MI 48108-3330
Telephone:  734-418-4200
Facsimile:  734-418-4201
yfatabhoy@honigman.com
ablackburn@honigman.com

*Attorneys for the Plaintiff Starbucks Corporation*

61